**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **DAVID CHASE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:16-cv-01579** |
| | ) | **Judge Aleta A. Trauger** |
| **GLENN R. FUNK,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Before the court is the Motion to Dismiss (Doc. No. 15) filed by defendants Glenn R. Funk and Katrin Novak Miller. The motion has been fully briefed by both parties and is ripe for consideration. For the reasons set forth herein, the court will grant the motion and dismiss this action.

## I.    FACTUAL AND PROCEDURAL HISTORY

For purposes of reviewing the defendants' motion, the court accepts as true the factual allegations in plaintiff David Chase's Complaint, which states in relevant part as follows.

After a former girlfriend, Lauren Bull, falsely alleged that Chase physically assaulted her on Sunday, June 8, 2014, Chase was charged with vandalism, aggravated assault, domestic assault, and interference with an emergency call. All charges were bound over to a Davidson County grand jury.

While the charges were pending, Chase and his attorney presented incontrovertible evidence that Bull had fabricated her story of assault in an effort to extort money from Chase.

Despite being presented with such evidence, the defendants in this action, District Attorney Glenn Funk and Assistant District Attorney Katrin Miller, failed to perform any investigation to corroborate the victim's statements or to exonerate Chase; instead, they intentionally and maliciously continued for months to prosecute charges they knew or should have known were false.

On June 5, 2015, Chase filed a federal civil rights lawsuit against the police officers involved in his June 8, 2014 arrest and detention. *Chase v. White*, No. 3:15-cv-00631 (M.D. Tenn.) (Doc. No. 1-1). Chase alleges that Funk and Miller thereafter agreed to dismiss the criminal charges against him, but only if he agreed in exchange to dismiss that federal lawsuit.

On July 1, 2015, the State of Tennessee filed a Notice of Dismissal of the charges against Chase, which described in detail the results of the investigation into the charges and the basis for the State's conclusions that Bull was not credible, had repeatedly lied to police officers and testified falsely in court, and had manipulated and destroyed evidence. (Doc. No. 1-2.)[1]

Chase filed this lawsuit on June 30, 2016, asserting claims against Funk and Miller in their individual capacities under 42 U.S.C. § 1983 for violations of the plaintiff's rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and claims under the Tennessee Governmental Tort Liability Act ("TGTLA") and Tennessee common law for false arrest, false imprisonment, defamation, negligence, negligent supervision, and civil conspiracy. The Complaint also set forth municipal liability claims

---

[1] The Complaint, which was filed on June 30, 2016, states that the dismissal occurred on July 1, 2016 (Doc. No. 1, at ¶ 9), an obvious typographical error. The Notice of Dismissal attached as an exhibit to the Complaint is dated July 1, 2015.

against the Metropolitan Government of Nashville and Davidson County ("Metro") and official capacity claims against Funk, based on the erroneous presumption that Funk and Miller were Metro employees.

On August 19, 2016, Metro filed a Motion to Dismiss, asserting as a matter of state law that Funk and Miller were employees of the State of Tennessee, not Metro employees. On August 25, 2016, Funk and Miller filed their own Motion to Dismiss. Upon the plaintiff's failure to file a timely response to either, the court granted both motions. The court subsequently granted in part the plaintiff's Motion for Reconsideration, set aside the dismissal of the claims against Funk and Miller, and permitted the plaintiff to respond to the merits of their Motion to Dismiss. The court did not reinstate the claims against Metro, however.

Chase responded to Funk and Miller's motion (Doc. Nos. 24, 25); upon the court's permission, the defendants filed a reply (Doc. No. 27) and Chase, a surreply (Doc. No. 32). Thereafter, the defendants filed a Motion for Sanctions (Doc. No. 33) under Rule 11(c) of the Federal Rules of Civil Procedure, asserting that the plaintiff's claims are frivolous, lack evidentiary support, and are barred by black-letter law. In response, the plaintiff filed a Notice of Voluntary Dismissal of Certain Claims and Capacities (Doc. No. 35), expressly dismissing with prejudice any claims against Funk and Miller in their official capacities and those claims sounding in negligence, including Counts V and VI of the Complaint.[2]

---

[2] Confusingly, the plaintiff notices the dismissal of the "negligence and/or negligent supervision claims" *and* dismissal of Count VI. Count VI asserts the negligent supervision claim. It is therefore unclear whether the plaintiff intended to nonsuit some other claim in the Complaint.

## II.     LEGAL STANDARD

The defendants' motion is brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action" but, instead, must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

## III.     DISCUSSION

In light of the dismissal of all claims against Metro and the official capacity and negligence claims against Funk and Miller, what remains pending are Chase's claims that the

defendants, acting in their individual capacities, (1) violated his First and Fourth Amendment rights by maliciously prosecuting the state criminal charges against him and conditioning dismissal of the charges on the plaintiff's agreement to dismiss his federal civil lawsuit; (2) violated his constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments; (3) committed false arrest and false imprisonment in violation of state law; (4) defamed him; and (5) conspired to carry out the various tortious and unconstitutional acts. The defendants move for dismissal of all claims against them.

### A. Prosecutorial Immunity for Claims Relating to Prosecution and Dismissal of Charges

State prosecutors are absolutely immune from liability under 42 U.S.C. § 1983 for actions taken within the scope of their prosecutorial duties. *Howell v. Sanders*, 668 F.3d 344, 349 (6th Cir. 2012) (citing *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976); *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997)). "To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Imbler*, 424 U.S. at 427. Nonetheless, prosecutors are entitled to absolute prosecutorial immunity for any conduct relating to "initiating a prosecution and . . . presenting the State's case." *Id.* at 431. In contrast, when a prosecutor functions as an investigator or administrator, rather than as an officer of the court, he is entitled only to qualified immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (citing *Imbler*, 424 U.S. at 431 n.33). Qualified immunity is available to prosecutors when they perform "investigative" or "administrative" functions unrelated to judicial proceedings. *Burns v. Reed*, 500 U.S. 478, 483 n.2 (1991).

The Supreme Court employs a "functional approach" to determine when a prosecutor is acting within the scope of his duties as a prosecutor and when he is merely giving legal

advice or investigating. *Id.* at 486; *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). "[T]he critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process." *Ireland*, 113 F.3d at 1443 (internal quotation marks omitted). The Sixth Circuit has explained that "[t]he analytical key to prosecutorial immunity is advocacy—whether the actions in question are those of an advocate." *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir.2003). The party seeking the benefit of a claim of absolute immunity has the burden of establishing it. *Burns*, 500 U.S. at 486.

Under this approach, the Sixth Circuit has held that a prosecutor is absolutely immune from a lawsuit based upon the professional evaluation of evidence, *Ireland*, 113 F.3d at 1445; the "decision to file a criminal complaint and seek issuance of an arrest warrant," *Joseph v. Patterson*, 795 F.2d 549, 555 (6th Cir. 1986), *abrogated on other grounds by Kalina v. Fletcher*, 522 U.S. 118 (1997); the failure to disclose exculpatory information, *Imbler*, 424 U.S. at 431 n.34; *Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986); knowing presentation of false testimony at trial, *Spurlock*, 330 F.3d at 797; and the negotiation of a plea bargain, *see, e.g.*, *Rouse v. Stacy*, 478 F. App'x 945, 951 (6th Cir. 2012) ("[I]t is beyond question that a prosecutor's plea bargaining activities, regardless of motive, warrant absolute immunity."). In addition, the Sixth Circuit has expressly concluded that a prosecutor was absolutely immune to claims relating to his participation in a "release-dismissal agreement," in which the prosecutor agreed to drop charges in exchange for the defendant's agreement not to pursue a civil action against third parties involved in the incident that gave rise to the criminal charges. *Cady v. Arenac Cnty.*, 574 F.3d 334, 340 (6th Cir. 2009).

In the case at bar, the plaintiff's core claims appear to be that (1) the defendants

instituted criminal charges against him and maliciously continued to pursue the charges even after they learned that the charges could not be substantiated; and (2) the defendants violated the plaintiff's First Amendment right to access the courts when they conditioned dismissal of the criminal charges upon the plaintiff's agreement to dismiss his federal civil rights lawsuit against the police officers involved in his arrest.

With respect to the former claim, the plaintiff alleges that Funk and Miller "willfully, maliciously, and intentionally or recklessly failed to perform any investigation to corroborate Bull's allegations or to exonerate Mr. Chase" and refused to dismiss the charges, even when they "certainly [knew] that they absolutely lacked any probable cause" and "that the charges were false." (Compl. ¶¶13, 14.) The decision to prosecute is a core prosecutorial function with respect to which the defendants are entitled to absolute immunity. *See Imbler*, 424 U.S. at 431 (holding that prosecutors are entitled to absolute prosecutorial immunity for any conduct relating to "initiating a prosecution and . . . presenting the State's case"). The defendants are therefore absolutely immune from liability for continuing to prosecute the charges against Chase, even after they allegedly knew the charges were based on false accusations.

Moreover, "as a matter of logic, absolute immunity must also protect the prosecutor from damages suits based on his decision *not* to prosecute." *Scholls v. Bouse*, 876 F.2d 287, 290 (2d Cir. 1989). Although Chase does not specifically challenge the defendants' decision to dismiss the charges against him, he argues that the defendants acted outside the scope of their prosecutorial authority by conditioning dismissal upon Chase's agreement to dismiss his federal civil lawsuit. Other courts that have considered this question have concluded that such conditional release agreements are within a prosecutor's authority. *See, e.g.*, *Cady*, 574

F.3d at 340 (affording absolute immunity to prosecutor involved in release-dismissal agreement).

In *Scholls v. Bouse*, a case factually analogous to this one, the prosecutor-defendant had offered the plaintiffs an agreement not to prosecute in return for the execution of releases in favor of the police agencies and municipalities involved in arresting and detaining the plaintiffs in the first place. The appellate court affirmed the dismissal of the claims against the prosecutor on absolute immunity grounds, rejecting the plaintiffs' argument that "coercion of releases is not the type of conduct to which [absolute] immunity is accorded." *Id.*[3] In reaching that conclusion, the court first noted that prosecutors are entitled to absolute immunity from suits based on decisions *not* to prosecute. *Id.* at 290. The plaintiff, of course, did not simply challenge the decision not to prosecute but, rather, the prosecutor's "demand, in exchange for that decision, that plaintiffs execute releases in favor of the policemen and the municipalities." *Id.* Based on the plaintiff's description of the arrangement, the court found that "the demand for releases and the threat to prosecute were interdependent" and, therefore, that entire agreement was "properly viewed as . . . a prosecutorial decision, albeit a conditional one." *Id.* at 291. "The nature of absolute immunity is such that it attaches to even

---

[3] Though plea bargaining is a prosecutorial function, absolute immunity will not extend to every possible demand that could be made in the plea bargaining process. "[W]here a prosecutor acts without any colorable claim of authority, he loses the absolute immunity he would otherwise enjoy." *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir.1987). Likewise, actions that are "manifestly or palpably beyond [the prosecutor's] authority" will not be protected by absolute immunity. *See Schloss*, 876 F.2d at 291 (citing *Stump v. Sparkman*, 435 U.S. 349, 357 (1978), and *Spalding v. Vilas*, 161 U.S. 483, 498 (1896)). Thus, for example, "demands for bribes or sexual favors" in exchange for a plea bargain would clearly exceed the scope of a prosecutor's authority. *Id.* at 291; *see also Doe v. Phillips*, 81 F.3d 1204, 1210–11 (2d Cir. 1996) (holding that a prosecutor was not entitled to absolute immunity where the decision not to bring charges was conditioned on the defendant's agreement to swear her innocence on a Bible in her church).

conditional prosecutorial decisions. . . ." *Id.*

Based on the plaintiff's factual allegations, this court likewise concludes that the decision to dismiss, conditioned on Chase's agreement to dismiss his claims against third parties, was a prosecutorial decision to which absolute immunity extends. That the ultimate decision to dismiss was conditional does not take the decision outside the scope of the prosecutors' authority.

### B.      Failure to State a Claim for Other Constitutional Violations

In addition to the claims connected with the prosecution and dismissal of the criminal charges, the plaintiff also purports to bring claims against Funk and Miller based upon violations of his right to be free of unreasonable searches and seizures, the right to bodily integrity, and the right to be free from the use of excessive force; deprivation of liberty without due process of law; and violation of his right to a fair and impartial jury. (Compl. ¶ 34.) The Complaint, however, does not allege facts showing that these rights were violated at all, much less that they were violated by defendants Funk and Miller. It simply states: "Defendants, acting in concert and under color of law, further violated Mr. Chase's constitutional and other protected rights, including his aforesaid rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments, and under 42 U.S.C. 1983 and 1988, and under the Tennessee constitution and state law." (Compl. ¶ 19.)[4]

Under *Twombly*, "labels and conclusions" and "formulaic recitation of the elements

---

[4] The Complaint alleges that the defendants "were acting in furtherance of their employment by Metropolitan Government of Nashville and Davidson County, so as to give rise to *respondeat superior*, as may be permitted under law." (Compl. ¶ 21.) The claims against Metro have been dismissed, however, and the plaintiff has effectively conceded that Funk and Miller were state employees, not Metro employees. The court, therefore, does not address the *respondeat superior* allegations.

of a case of action" are insufficient to state a claim for relief. 550 U.S. at 555. Because the Complaint is completely devoid of factual allegations to support the plaintiff's claims of violations of other constitutional rights or the defendants' involvement in such violations, the court will dismiss the remaining § 1983 claims for failure to state a claim for which relief may be granted.

### C.      State Law Claims

The plaintiff also asserts that Funk and Miller committed malicious prosecution, false arrest and false imprisonment, defamation, and conspiracy, in violation of state law.

The defendants are immune under state law from malicious prosecution claims. *See Shell v. State*, 893 S.W.2d 416, 420 (Tenn. 1995) ("[I]t is settled that prosecutors are immune from actions for malicious prosecution under both § 1983 and state common law." (citations omitted)); *Willett v. Ford*, 603 S.W.2d 143, 147 (Tenn. Ct. App. 1979) ("[S]ince the same immunity is applied in §1983 actions as is applied in common law actions, the decisions in those cases such as *Imbler* which involve prosecutorial immunity under § 1983 are equally applicable to common law actions such as in the case at bar."). In *Willett*, the court made it clear that allegations of the existence of a conspiracy "in no way . . . abrogate[] the immunity of the prosecutor which would otherwise be afforded him." 603 S.W.2d at 147.

The Complaint contains no factual allegations indicating that Funk and Miller had any personal involvement in the arrest and detention of Chase on June 8, 2014. Under Count III of the Complaint, he states that the defendants, "without probable cause, willfully, maliciously, and unlawfully seized, detained, restrained, and imprisoned him against his will through the use of threats of continued malicious prosecution for a period of several hours over two occasions." (Compl. ¶ 45.) The plaintiff never alleges, however, that Funk and

Miller were involved in his arrest and initial detention. The statements in the Complaint amount to nothing more than a recitation of the elements of a cause of action, which are insufficient under *Twombly* to state a claim.[5]

To state a claim for defamation under Tennessee law, the plaintiff must allege facts that, at a minimum, would establish that the defendant published a false and defaming statement about the plaintiff. *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999). The Complaint does not contain any allegations that either defendant published any statement about the plaintiff, false or otherwise. In his Response in Opposition to the Motion to Dismiss, the plaintiff purports to quote a statement made to news reporters by Funk on February 5, 2016, to the effect that "he did not want to deter victims from reporting domestic violence." (Doc. No. 25, at 9.) The court is not inclined to permit the plaintiff to amend his complaint by including new factual allegations in his response to the Motion to Dismiss. Moreover, the quoted statement, on its face, is not about the plaintiff and is not alleged to be false. The defamation claim, too, is subject to dismissal for failure to state a claim for which relief may be granted.

Finally, the Complaint purports to state a claim for "civil conspiracy." (Compl. Count VII.) Conspiracy "requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180

---

[5] Although the defendants do not expressly assert the defense, the false arrest and false imprisonment claims are clearly barred by the statute of limitations. The limitations period in Tennessee for such actions is one year, Tenn. Code Ann. § 28-3-104(a)(1), and the cause of action accrues on the date of the false arrest and false imprisonment. *Dirks v. Tudors*, No. E2008-01384-COA-R3-CV, 2009 WL 1372180, at *1 (Tenn. Ct. App. May 18, 2009); *Gray v. 26th Judicial Drug Task Force*, No. 02A01-9609-CV-00218, 1997 WL 379141 (Tenn. Ct. App. July 8, 1997). The plaintiff was arrested on June 8, 2014, and he did not file this action until June 30, 2016, more than two years later.

(Tenn. Ct. App. 2007). Conspiracy, standing alone, is not actionable where the underlying torts are not actionable. *Id.* at 179–80. Because Chase has not established any other actionable tort, the claim of conspiracy to commit such torts must also be dismissed.

## IV.    CONCLUSION

For the reasons set forth herein, the court will grant the defendants' motion and dismiss this action in its entirety.

An appropriate order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge